Memorandum

THIRD DIVISION

June 30, 2003

No. 1-03-0267

BETTY HUTCHERSON AND SHEILA WILSON, )    Appeal from the

individually and on behalf of all ) Circuit Court of

others similarly situated, ) Cook County.

)

Plaintiffs-Appellees, )    

)  

v. ) 

) 

SEARS ROEBUCK & COMPANY, SEARS NATIONAL )

BANK AND ALLSTATE INSURANCE COMPANY, )    Honorable

) Gay-Lloyd Lott,

Defendants-Appellants. ) Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court:

This case serves as a reminder that people should read their mail -- especially when it comes from their credit card companies.  At issue here is the enforceability of an arbitration clause in an amended credit card agreement.  

Betty Hutcherson and Sheila Wilson filed a class action against Sears Roebuck & Company (Sears), Sears National Bank (SNB), and Allstate Insurance Company (Allstate), alleging unauthorized charges on their Sears credit cards.  Sears, SNB, and Allstate filed motions to compel arbitration and stay proceedings, contending Hutcherson and Wilson accepted an amendment to the credit agreement allowing either party to compel arbitration.  The trial court denied the motions.  Sears, SNB, and Allstate appeal.  We reverse and remand. 

BACKGROUND

THE COMPLAINT

According to the complaint, Sears offers credit cards to its customers.  In conjunction with Allstate and SNB, it also offers its customers credit insurance, called the Sears AccountCare Plan (Plan).  The application for a Sears credit card includes an enrollment option for the Plan on a prepaid postage form directing that the information be sent back to Sears.  The cost of the Plan is $0.96 for every $100 of outstanding balance on the card.  

Both Hutcherson and Wilson applied for and received Sears credit cards.  Neither applied for or requested the Plan.  Both were charged for the Plan.  Although both women called Sears about the charges, Sears continued to bill them for the Plan without their authorization.

The women filed a class action lawsuit seeking declaratory and injunctive relief as well as relief under the doctrines of unjust enrichment and constructive trust.  They also brought a count under the Illinois Consumer Fraud and Deceptive Business Practices Act.   

THE MOTIONS TO STAY THE PROCEEDINGS AND COMPEL ARBITRATION

On August 1, 2002, Sears and SNB filed a motion to stay the proceedings and compel arbitration.  Allstate filed a similar motion the following day.  Copies of the original credit card agreements applicable to Hutcherson's and Wilson's accounts were attached to both motions.

Both agreements contain a "Governing Law" provision, which states, in relevant part:

"This agreement and my account will be governed by and interpreted in accordance with the laws of the State of Arizona and the United States, regardless of where I live or where I use my account ***." 

Both agreements also contain a "Change of Terms" provision that states, "As permitted by law, SNB has the right to change any term or part of this agreement, including the rate of Finance Charge, applicable to current and future balances."  Neither agreement contained an arbitration provision.

According to an affidavit in support of the motion to compel arbitration, credit card customers were sent a notification of amendments to the credit card agreement in March or April 2001.  The cover letter did not mention an arbitration provision, but stated:

"The changes to the terms governing your Account will become effective 30 days from your receipt of this notice, unless you notify us in writing before that date at ***.   In your written notice, *** please state that you wish to reject the new Agreement.  If you so notify us, you will not be able to make additional purchases and you may pay the outstanding balance under the terms currently governing your Account."

The mailing also included a pamphlet containing the revised credit card agreement.  Section 21 of the pamphlet contained an arbitration provision that read, in part:

"Any and all claims, disputes or controversies of any nature whatsoever (whether in contract, tort, arising out of statute, or otherwise) arising out of, relating to, or in connection with: (a) this Agreement; *** (e) the establishment, operating, handling or termination of the Account; (f) any transaction or attempted transaction relating to the Account; or (g) the validity, scope or enforceability of this arbitration section of this Agreement or any prior credit card agreement ***, shall be resolved, upon your election or our election, by final and binding arbitration before a single arbitrator, on an individual basis without resort to any form of class action, except that each party retains the right to seek relief in a small claims court, on an individual basis without resort to any form of class action, for claims within the scope of the jurisdiction of the small claims court."

All of section 21, including the above-quoted paragraph, was in the same font and size as the rest of the text in the pamphlet, except for the following paragraph:

"YOU UNDERSTAND AND AGREE THAT, UNDER THIS AGREEMENT, IF ARBITRATION IS CHOSEN BY YOU OR US, YOU WILL NOT HAVE THE RIGHT TO GO TO COURT (EXCEPT FOR SMALL CLAIMS COURT) ON THAT CLAIM OR TO HAVE A JURY TRIAL ON THAT CLAIM.  IF ARBITRATION IS CHOSEN, YOU ALSO WILL NOT BE ABLE TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO THAT CLAIM AND YOU WILL HAVE ONLY THOSE RIGHTS THAT ARE AVAILABLE IN ARBITRATION.  THE DECISION OF THE ARBITRATOR WILL BE FINAL AND BINDING EXCEPT AS PROVIDED IN THE FEDERAL ARBITRATION ACT." 

The amended credit card agreement also contains a revised "Governing Law" provision, which states:

"This agreement and your Account will be governed by and interpreted in accordance with Federal law and, to the extent governed by state law, the laws of the State of Arizona, regardless of where you live or where you use the Account." 

In their motions to compel arbitration, Sears, SNB, and Allstate contended the arbitration clause and the Federal Arbitration Act (FAA), 9 U.S.C.A. § 1 
et
 
seq
. (West 1999) require the court to compel arbitration and stay the proceedings before it.  

Hutcherson and Wilson responded that the arbitration clause was not enforceable against them.  In particular, they contended the clause improperly interfered with their right to pursue certain remedies under the Illinois Consumer Fraud and Deceptive Practices Act, was unconscionable, and lacked sufficient consideration.

THE TRIAL COURT'S RULING

On January 10, 2003, the trial court denied the motion to stay the proceedings and compel arbitration, although the basis for the ruling is not entirely clear from its opinion.  SNB, Sears, and Allstate filed this appeal pursuant to Supreme Court Rule 307(a)(1).  188 Ill. 2d R. 307(a)(1).

DECISION

The trial court did not hold an evidentiary hearing in this case.  Although in its opinion and order the court recited the facts contained in the complaint and in the motions to stay the proceedings and compel arbitration, the court did not make any factual findings.  Nor are any of the relevant underlying facts in dispute.  Rather, the court's decision was based on a purely legal analysis.  Thus, we review the trial court's denial of the motions to stay the proceedings and compel arbitration 
de
 
novo
.  
Bass v. SMG, Inc.
, 328 Ill. App. 3d 492, 496, 765 N.E.2d 1079 (2002).  

I.  THE FEDERAL ARBITRATION ACT

Section 2 of the FAA provides an agreement to arbitrate in a contract evidencing a transaction involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C.A. § 2 (West 1999).  The United States Supreme Court has said repeatedly this statute "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."  
Moses H. Cone Memorial Hospital v. Mercury Construction Corp.
, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765, 785 (1983); see also, 
e.g.
, 
PacifiCare Health Systems, Inc. v. Book
, __ U.S. __, 123 S. Ct. 1531, 1536 fn. 2, 155 L. Ed. 2d 578, __  (2003) (acknowledging the existence of a presumption in favor of arbitration); 
Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.
, 473 U.S. 614, 625-26, 105 S. Ct. 3346, 3353, 87 L. Ed. 2d 444, 454 (1985) (the primary concern of the legislature in enacting the statute was to enforce private agreements, which requires rigorous enforcement of arbitration agreements)
.  

Arbitration agreements are a matter of contract.  
AT&T Technologies, Inc. v. Communications Workers of America
, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648, 655 (1986).  A party cannot be compelled to submit to arbitration a dispute that he has not agreed to submit to arbitration.  
AT&T Technologies, Inc.
, 475 U.S. at 648, 106 S. Ct. at 1418, 89 L. Ed. 2d at 655.  And unless the parties "clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  
AT&T Technologies, Inc.
, 475 U.S. at 649, 106 S. Ct. at 1418, 89 L. Ed. 2d at 656.

When deciding whether there is a valid agreement to arbitrate, "courts generally *** should apply ordinary state-law principles that govern the formation of contracts."  
First Options of Chicago, Inc. v. Kaplan
, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985, 993 (1995).   

II.  CHOICE OF LAW

Although both parties agree the FAA applies to the arbitration provision at issue here, the parties dispute which state's substantive law should be applied to the contract issues in this case.  Hutcherson and Wilson contend the choice-of-law provision requires application of Arizona's conflict principles, which, in turn, requires us to use the substantive law of Alabama and Illinois.  We disagree.  

The "Governing Law" provisions of the original and amended credit card agreements designate Arizona law as the governing law where applicable.  We find nothing in these provisions signifying an intention to apply anything other than the substantive law of Arizona to contract disputes.  To interpret the choice-of-law provision here as referring to Arizona's conflict law "would introduce the uncertainties of choice of law into the proceedings and would serve to defeat the basic objectives, namely those of certainty and predictability, which the choice-of-law provision was designed to achieve."  Restatement (Second) of Conflict of Laws § 187 cmt. h (1971).  Arizona substantive law applies to the contract issues in this case.  

III.  UNCONSCIONABILITY

In 
Maxwell v. Fidelity Financial Services, Inc.
, 184 Ariz. 82, 907 P.2d 51 (Ariz. 1995), the Arizona Supreme Court described the unconscionability principle as " 'one of the prevention of oppression and unfair surprise.' "  
Maxwell
, 184 Ariz. at 88, 907 P.2d at 57, quoting 
Seekings v. Jimmy GMC of Tucson, Inc.
, 130 Ariz. 596, 602, 638 P.2d 210, 216 (Ariz. 1981).  The court distinguished between two types of unconscionability: procedural and substantive.  
Maxwell
, 184 Ariz. at 88, 907 P. 2d at 57.
(footnote: 1)  Hutcherson and Wilson contend the amendment adding the arbitration agreement is unenforceable because it is both procedurally and substantively unconscionable.  

A.  Procedural Unconscionability

Procedural unconscionability " 'is concerned with 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should.’ "  
Maxwell
, 184 Ariz. at 88-89, 907 P. 2d at 57-58, quoting Dan B. Dobbs, 2 Law of Remedies 706 (2d ed. 1993).
(footnote: 2)  Among the factors to consider in determining whether a contract is procedurally unconscionable are:

“ ‘age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question.’ ” 
Maxwell
, 184 Ariz. at 89, 907 P.2d at 58, quoting 
Johnson v. Mobil Oil Corp.
, 415 F. Supp. 264, 268 (E.D. Mich. 1976).  

Neither party cites to, nor did we find, an Arizona case addressing whether an amendment adding an arbitration agreement to a credit card agreement such as the one here was unconscionable.  However, several other jurisdictions have addressed this issue.  We turn to these cases for guidance because they contain many of the elements we find in this case.  

In 
Bank One, N.A. v. Coates
, 125 F. Supp. 2d 819 (S.D. Miss. 2001), 
aff’d
, 2002 WL 663804 (5
th
 Cir. 2002), Bank One, the credit card issuer, sent a notice to its card holders, including defendant, announcing a proposed modification to the credit card agreement that contained an arbitration provision.  The arbitration provision contained a paragraph printed in capital letters notifying the card holders they were, in essence, relinquishing their right to bring claims arising out of the agreement in court.  The notice told card holders they could reject the amendment by written notice.  The defendant contended the amendment was unconscionable because he was not sufficiently apprised of the provision.    

The court said "the arbitration provision is not rendered unenforceable simply by virtue of the fact that Bank One undertook to add the arbitration provision via amendment."  
Bank One, N.A.
, 125 F. Supp. 2d at 831.  Under the original agreement, Bank One could validly amend the agreement to add an arbitration provision even though the original agreement made no mention of arbitration.  
Bank One, N.A.
, 125 F. Supp. 2d at 831.  In concluding that the amendment was not procedurally unconscionable, the court noted, among other things, the arbitration clause itself was clear and not filled with "legalese" and the print was consistent and legible, albeit small.  
Bank One, N.A.
, 125 F. Supp. 2d at 833-34. 

Similarly, in 
Stiles v. Home Cable Concepts, Inc.
, 994 F. Supp. 1410 (M.D. Ala. 1998), the plaintiff, a credit card holder,  received a notice of an amendment adding an arbitration provision to the credit card agreement.  The notice also contained a postage-paid card with language indicating the card holder was rejecting the amendment.  The plaintiff did not send the notice of rejection.  

In rejecting the plaintiff's claim of unconscionability, the court noted that arbitration clauses are not 
per
 
se
 unconscionable.  
Stiles
, 994 F. Supp. at 1418.  The plaintiff was given a clear choice -- he could accept or reject the arbitration provision.  
Stiles
, 994 F. Supp. at 1418.  Even if he had not been given this choice, the amendment might still be enforceable because the original agreement allowed the credit card issuer to undertake the change without the plaintiff's consent.  
Stiles
, 994 F. Supp. at 1418.  

A number of other cases have upheld the validity of similar amendments adding arbitration clauses to existing contracts.  See, 
e.g.
, 
Beneficial National Bank, U.S.A. v. Payton
, 214 F. Supp. 2d 679, 686-88 (S.D. Miss. 2001) (arbitration provision contained in notice mailed to credit card holders became a part of the contract where the card holder failed to opt-out of the arbitration provision as permitted to); 
Herrington v. Union Planters Bank, N.A.
, 113 F. Supp. 2d 1026, 1031-32 (S.D. Miss. 2000) (by failing to close their accounts, bank customers accepted amendment to the terms governing their accounts that added arbitration provision), 
aff'd
, 265 F.2d 1059 (5th Cir. 2001); 
Marsh v. First USA Bank, N.A.
, 103 F. Supp. 2d 909 (N.D. Tex. 2000) (arbitration provision added by amendment was not so "lopsided" as to be oppressive or prejudicial even though it was presented in a "take-it-or-leave-it manner"); 
SouthTrust Bank v. Williams
, 775 So. 2d 184, 190-91 (Ala. 2000) (bank customer implicitly assented to be bound by amendment adding arbitration provision by maintaining account open after notified of amendment); 
Joseph v. M.B.N.A. America Bank, N.A.
, 148 Ohio App. 3d 660, 664, 775 N.E.2d 550, 553 (2002) (amendment to credit card agreement adding arbitration provision was not unconscionable because plaintiff was given the right to opt-out by terminating the agreement and the arbitration provision was not so one-sided as to be 
per
 
se
 unconscionable).  We glean from these cases that an amendment to a contract adding an arbitration provision is not necessarily invalid, particularly where the customer is given the option to "opt-out" of the amendment and fails to do so.

In this case, Hutcherson and Wilson were placed on notice in their original credit card agreement that the agreement could be amended.  They were told that, where required by law, written notices of amendments would be sent to them.  Thus, the amendment adding the arbitration provision should not have been a surprise.

The amendment was accompanied by a cover letter.  Although the letter did not mention the addition of the arbitration provision, it did say the new agreement enclosed "contains the new terms applicable to your Account."  The letter also urged the account holders to "read this notice and the enclosed Agreement carefully and retain them for [their] records."  That should have caught Hutcherson's and Wilson's attention.  

The enclosed agreement was a pamphlet setting out the proposed, amended credit card agreement.  The entire text of the pamphlet was in small text with nothing other than headings in any remarkable font, with one exception: the paragraph in the section on the arbitration agreement notifying the customer he was relinquishing his right to have any dispute arising from the agreement heard in a court.  This entire paragraph was in capital letters.  Even a person conducting a cursory review of the pamphlet would have noticed this paragraph.  

Hutcherson and Wilson also contend this amendment was oppressive.  However, they had an opportunity to reject it.  In the last paragraph on the backside of the cover letter, they were told the new agreement would go into effect 30 days after their receipt of the notice, unless they notified Sears in writing before that date.  Neither Hutcherson or Wilson contend they did so.

Hutcherson and Wilson say this last paragraph was unfair because it required them to pay the entire remaining balances on their cards before the expiration of the 30-day period.  Not so.

The letter said that if the account holder rejected the terms of the amended agreement, he "[would] not be able to make additional purchases and [could] pay the outstanding balance under the terms currently governing [his] Account."  We do not read this, or the terms of the original credit card agreement, to mean the full balance would become due immediately upon rejection of the amended agreement.  On the contrary, under the original agreement, still in effect, the only way SNB could declare the entire balance immediately due and payable was if the account holder was considered in default.  Rejection of an amended credit card agreement was not among the list of circumstances where an account holder would be considered in default.  

Hutcherson and Wilson also contend the amended agreement is a contract of adhesion, which, they say, renders the amended agreement procedurally unconscionable 
per
 
se
.  Hutcherson and Wilson rely on several cases based on California law in support of this proposition.  See, 
e.g.
, 
Flores v. Transamerica Homefirst, Inc.
, 93 Cal. App. 4th 846, 853 (2001) (finding that a contract is one of adhesion is essentially a finding of procedural unconscionability); 
Ting v. AT&T
, 319 F.3d 1126, 1148 (9
th
 Cir. 2003) (based on California law, a contract is procedurally unconscionable if it is a contract of adhesion).  

The Supreme Court of Arizona has addressed this issue.  In 
Broemmer v. Abortion Services of Phoenix, Ltd.
, 173 Ariz. 148, 840 P.2d 1013 (Ariz. 1992), the court said a conclusion that a contract is one of adhesion does not, by itself, determine its enforceability.  
Broemmer
, 173 Ariz. at 151, 840 P.2d at 1016.  That is, the question of whether a contract is an adhesion contract is separate and distinct from the issue of unconscionability.  
Broemmer
, 173 Ariz. at 151, 840 P.2d at 1016 ("To determine whether [a] contract of adhesion is enforceable, we look to two factors: the reasonable expectations of the adhering party and whether the contract is unconscionable").  

In sum, Hutcherson and Wilson were on notice that the credit card agreement could be amended by SNB.  They were sent a notice of changes to the agreement, including an amended agreement containing the arbitration provision.  The arbitration provision contained a conspicuous paragraph, in capital letters, notifying card holders they were relinquishing their rights to bring claims in court.  The card holders also were allowed to opt out of the amendments without causing their balances to become due and payable immediately.  Under these circumstances, the addition of the arbitration provision was not procedurally unconscionable.

B.  Substantive Unconscionability

“ ‘Substantive unconscionability is an unjust or ‘one-sided’ contract.’ ”  
Maxwell
, 184 Ariz. at 89, 907 P. 2d at 58, quoting Dan B. Dobbs, 2 Law of Remedies 706 (2d ed. 1993).  This type of unconscionability "concerns the actual terms of the contract and examines the relative fairness of the obligations assumed" and is indicated by "contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity."  
Maxwell
, 184 Ariz. at 89, 907 P. 2d at 58.  

Hutcherson and Wilson advance a number of theories under which, they say, the agreement is substantively unconscionable.  None of these theories carries the day.

1.  Class Action

Hutcherson and Wilson contend the arbitration provision impermissibly bars them from pursuing their rights in a class action.  Arizona courts have not addressed this issue, so we look to other jurisdictions for guidance.  

Hutcherson and Wilson rely on 
Leonard v. Terminix International Co.
, 2002 WL 31341084 (Ala. 2002).  In 
Leonard
, the Alabama Supreme Court held an arbitration agreement precluding class actions was unconscionable "because it is a contract of adhesion that restricts the [plaintiffs] to a forum where the expense of pursuing their claim far exceeds the amount in controversy.  The arbitration agreement achieves this result by foreclosing the [plaintiffs] from an attempt to seek practical redress through a class action and restricting them to a disproportionately expensive individual arbitration.”  
Leonard
, 2002 WL 31341084, at *8.  

The court focused on the comparison between the amount in dispute and the cost to the plaintiffs of proceeding by arbitration.  The plaintiffs’ claim was for less than $500.  Yet,  
at a 
minimum
, the plaintiffs would have to pay $1150 in arbitration fees, not including the cost of the meeting room and attorney, to submit the claim to arbitration.  
Leonard
, 2002 WL 31341084, at *5.  Clearly, an unconscionable procedure.  

Hutcherson and Wilson also rely on 
Szetela v. Discover Bank
, 97 Cal. App. 4th 1094, 118 Cal. Rptr. 2d 862 (2002).  In 
Szetela
, the court found substantively unconscionable an arbitration provision that prohibited class actions.  The court said the provision ultimately protected the credit card companies because they were unlikely to file class actions against customers, and customers were unlikely to pursue small claims in small claims court.  The no-class-action clause served as a disincentive to credit card companies to stop bad business practices.  The court said this provision violated public policy by granting the credit card company a " 'get out of jail free' card while compromising important consumer rights."  
Szetela
, 97 Cal. App. 4th at 1101, 118 Cal. Rptr. 2d at 868.  Lastly, the court said the provision violated the policy behind class actions: "to promote judicial economy and streamline the litigation process in appropriate cases."  
Szetela
, 97 Cal. App. 4th at 1101-02, 118 Cal. Rptr. 2d at 868.

Other cases cited by Hutcherson and Wilson invalidating arbitration provisions on the basis that they prohibit class actions are based on the same arguments addressed in 
Leonard
 and 
Szetela
.  See 
Luna v. Household Finance Corp. III
, 236 F. Supp. 2d 1166, 1178-79 (W.D. Wash. 2002) (relying primarily on the discouraging costs of arbitration in concluding no-class-action provision was unconscionable); 
Mandel v. Household Bank (Nevada), National Association
, 129 Cal. Rptr. 2d 380, 385-86 (2003) (relying on 
Szetela
 in concluding no-class-action provision is unconscionable), 
review granted
, 65 P.3d 1284, 132 Cal. Rptr. 2d 525 (Cal. Apr. 9, 2003); 
Ting
, 319 F.3d at 1150 (relying on 
Szetela
 in concluding the bar to class actions rendered the arbitration provision unconscionable).   

The circumstances leading to the court's conclusion in 
Leonard
 are not present here.  The arbitration provision in the amended agreement provides, "We will advance any fees required of you by the NAF [National Arbitration Forum] or any alternative arbitrator or arbitration organization if you send us a written request."  The provision also notified card members that the arbitrator could order a refund of any fees advanced "
only if
 the arbitrator determines that your claims or defenses were frivolous."  (Emphasis added.)  Thus, unlike the costs to the plaintiffs in 
Leonard
, the costs to Hutcherson and Wilson of submitting a nonfrivolous claim to arbitration would be minimal.  

Moreover, we are not convinced by the court's analysis in 
Szetela
.  Although we agree that a no-class-action provision would rarely, if ever, have any effect on a credit card company, we do not agree that such a provision essentially gives SNB a "get out of jail free" card.  In this case, the arbitrator's decision is final and binding on SNB.  Moreover, SNB undertakes the burden of all arbitration fees at the customer's request.  SNB would remain responsible for the fees even if the customer loses but the arbitrator finds the claims were not frivolous.  

We also disagree with 
Szetela
's conclusion that the preclusion of a class action violates the public policy in favor of promoting judicial economy and streamlining litigation.  By agreeing to submit claims to arbitration, the parties have agreed to remove their disputes from the judicial forum.  Congress, in contemplating passage of the FAA, recognized the potential benefit of enforcing arbitration agreements -- the "expedited resolution of disputes."  
Dean Witter Reynolds, Inc. v. Byrd
, 470 U.S. 213, 220, 105 S. Ct. 1238, 1242, 84 L. Ed. 2d 158, 165 (1985) ("'costliness and delays of litigation *** can be largely eliminated by agreements for arbitration, if arbitration agreements are made valid and enforceable,' " quoting H.R.Rep. No. 96, 68th Cong., 1st Sess., 2 (1924)).   

In any case, the United States Supreme Court has said the primary motivation in passing the FAA was to enforce private agreements.  Concerns over efficient and speedy dispute resolution must yield to this primary objective.  
Dean Witter Reynolds, Inc.
, 470 U.S. at 220-21, 105 S. Ct. at 1242-43, 84 L. Ed. 2d at 165. 

Numerous jurisdictions have upheld the validity of arbitration agreements against arguments contending they were invalid because they barred class actions.  See, 
e.g.
, 
Snowden v. Checkpoint Check Cashing
, 290 F.3d 631, 638-39 (4
th
 Cir. 2002) (arbitration agreement’s bar to class actions was not unconscionable because plaintiff could potentially recover fees under applicable law); 
Lloyd v. MBNA America Bank
, 2002 WL 21932, at *2 (3d Cir. 2002) (the arbitration provision was enforceable despite waiver of class action where bank agreed to advance costs, the arbitrator determines fees, and the statute under which the cause of action was brought did not provide unwaivable right to class actions); 
Marsh
, F. Supp. 2d at 924 (plaintiff’s substantive rights would be adequately preserved in arbitration even in absence of class action); 
c.f.
, 
Metro East Center for Conditioning and Health v. Quest Communications International, Inc.
, 294 F.3d 924, 927 (7
th
 Cir. 2002) (arguments based on the costs of arbitration and preclusion of class actions are “the sort of litany the Federal Arbitration Act is supposed to silence”).    

In particular, the court in 
Vigil v. Sears National Bank
, 205 F. Supp. 2d 566, 573 (E.D. La. 2002), considered the substantive unconscionability of the same arbitration provision at issue in this case.  The court rejected the card holder’s contention the provision was unconscionable because it barred class action.  Although the court did not conduct an in-depth analysis of the issue, it cited 
Randolph v. Green Tree Financial Corp.
, 244 F.3d 814, 819 (11
th
 Cir. 2001).

In 
Randolph
, the Eleventh Circuit Court of Appeals concluded an individual could contract away his right to bring a class action.  Central to the court’s analysis was that the Truth in Lending Act (TILA), under which the plaintiff brought his action, did not provide an unwaivable right to class actions.  Absent such a grant, the court held, “Giving full weight to the congressional policy embodied in the FAA, *** a contractual provision to arbitrate TILA claims is enforceable even if it precludes a plaintiff from utilizing class action procedures in vindicating statutory rights under TILA.”  
Randolph
, 244 F.3d at 819.

Although we recognize the importance of class actions as a tool for protecting consumers, we cannot ignore the strong policy that favors enforcement of arbitration provisions.  See, 
e.g.
, 
Moses H. Cone Memorial Hospital
, 460 U.S. at 24, 103 S. Ct. at 941, 74 L. Ed. 2d at 785.   Because the arbitration provision in this case provides financial protections to card holders with the burden of costs falling primarily on SNB, we do not find the no-class-action provision to be so one-sided or oppressive as to render the agreement unconscionable. 

2.  The "Escape Hatch" Clause

Hutcherson and Wilson contend the contract is extremely one-sided because it contains an "escape hatch clause" allowing SNB to amend the contract at any time to avoid an unfavorable arbitration decision.  They cite 
Morgan v. Bill Kay Chrysler Plymouth
, 2002 WL 31133102, at *4 (N.D. Ill. 2002) in support.  

In 
Morgan
, the court described an “escape hatch clause,” as used in insurance contracts and “condemned by Illinois courts,” as one that provides an insurer is not bound by an unfavorable arbitration decision.  
Morgan
, 2002 WL 31133102, at *4; but see 
Liberty Mutual Fire Insurance Co. v. Mandile
, 192 Ariz. 216, 963 P.2d 295 (Ariz. App. 1997) (escape hatch clause that allowed either insured or insurer to appeal from arbitration decision did not violate public policy).  

Neither the original credit card agreement nor the agreement as amended contains an "escape hatch clause."  On the contrary, the arbitration provision in the amended agreement clearly states, "THE DECISION OF THE ARBITRATOR WILL BE FINAL AND BINDING EXCEPT AS PROVIDED IN THE FEDERAL ARBITRATION ACT."  Nothing in this section suggests SNB can escape liability should the arbitrator render an unfavorable decision.  We reject this contention. 

3.  Confidentiality Requirement

Hutcherson and Wilson next contend the arbitration provision is unconscionable because the National Arbitration Forum (NAF) Code of Procedure Rules contain a confidentiality rule that operates to benefit only SNB, Sears, and Allstate.  They rely on 
Ting v. AT&T
, 319 F.3d 1126 (9th Cir. 2003), in support of their contention.

In 
Ting
, the contract containing the arbitration provision also contained the following provision:

“ ‘Any arbitration shall remain confidential.  Neither you nor AT&T may disclose the existence, content or results of any arbitration or award, except as may be required by law or to confirm and enforce an award.’ ”  
Ting v. AT&T
, 182 F. Supp. 3d 902, 931 (N.D. Cal. 2002), 
rev’d in part
, 319 F. 3d 1126 (9
th
 Cir. 2003).  

The Ninth Circuit Court of Appeals found this provision to be substantively unconscionable.  The court said the provision put AT&T in a “far superior legal posture by ensuring that none of its potential opponents have access to precedent while, at the same time, AT&T accumulates a wealth of knowledge on how to negotiate the terms of its own unilaterally crafted contract.”  
Ting
, 319 F.3d at 1152.   

In this case, the provision challenged by Hutcherson and Wilson is not contained in the arbitration agreement.  The provision appears in the NAF rules, which may or may not apply to the arbitration depending on whether Hutcherson and Wilson accept the NAF as the arbitral forum for their case.  Thus, the confidentiality requirement in the NAF rules does not render the arbitration provision unconscionable.  

Additionally, the confidentiality provision in the NAF rules differs significantly from the confidentiality provision at issue in 
Ting
.  The NAF Rule in question states:

"Arbitration proceedings are confidential, unless all Parties agree otherwise.  Arbitration Orders and Awards are not confidential.  A Party who improperly discloses confidential information shall be subject to Sanctions.  The Arbitrator and Forum may disclose case filings, case dispositions, and other case information as required by applicable law."  NAF Code of Procedure, Rule 4.  

Additionally, the NAF rules allow arbitrators to make findings of fact and conclusions of law in their awards where the parties agree or where either party requests such findings and conclusions prior to the hearing.  NAF Code of Procedure, Rule 4.   

Here, unlike in 
Ting
, arbitration orders and awards are not confidential.  Other potential plaintiffs would be able to learn the results and content of any past award and would not be operating "in the dark."  And, should plaintiffs request findings of fact and conclusions of law prior to the hearing, they will preserve for future plaintiffs the arbitrators' reasoning in issuing their awards.  This would not place SNB, Sears, or Allstate in any superior legal posture since the results of the arbitration and, in certain circumstances, the arbitrators' reasoning would be available to the public.    

4.  "Loser Pays All" Provision

Hutcherson and Wilson contend the NAF Code of Procedure, which would govern the arbitration unless the card holder selected a different arbitration forum, contains a "loser pays all" provision.  In particular, Hutcherson and Wilson refer to NAF Code of Procedure Rule 37(C), which states: "An Award may include fees and costs awarded by an Arbitrator in favor of any party as permitted by law or in favor of the Forum for fees due."   They say the rule improperly permits the arbitrator to make them responsible for Sears', SNB's, and Allstate's costs should Hutcherson and Wilson lose.  See 
Armendariz v. Foundation Health Psychcare Services, Inc.
, 24 Cal. 4
th
 83, 110-11, 6 P.3d 669, 99 Cal. Rptr. 2d 745 (2000) (an arbitration provision cannot require employee to bear any expense that he would not have if he were free to bring the action in court).  We disagree. 

The amended credit card agreement in this case allows an arbitrator to order a refund of any fees advanced by SNB only where the arbitrator determines the card holder's claims or defenses were frivolous.  This is consistent with Arizona law.  See 
Hunter Contracting Co. v. Superior Court
, 190 Ariz. 318, 325, 947 P.2d 892, 899 (Ariz. App. 1997) (J. McGregor, concurring) ("Rule 11 [of the] Arizona Rule[s] of Civil Procedure*** permits the court to impose sanctions against lawyers and parties who bring frivolous claims"); Ariz. Rev. Stat. Ann. § 12-341.01(C) (West 2003) ("The court shall award reasonable attorney fees in any contested action upon clear and convincing evidence that the claim or defense constitutes harassment, is groundless and is not made in good faith"); Ariz. Rev. Stat. Ann. §12-349 (West 2003) (allows court to award fees and expenses if an attorney or party brings or defends a claim without substantial justification).    

5.  "Repeat Player Effect"

Hutcherson and Wilson contend Sears, SNB, and Allstate also have an advantage over card holders in arbitration as a result of their repeated presence before the NAF arbitrators and cite to 
Mercuro v. Superior Court of Los Angeles County
, 96 Cal. App. 4
th
 167, 116 Cal. Rptr. 2d 671 (2002) in support.  In 
Mercuro
, the court found the "repeat player effect" favored one side.  
Mercuro
, 96 Cal. App. 4
th
 at 178-79.    Important to the court's analysis was that only eight arbitrators had offices in the area at issue and the NAF, not the parties, selected the arbitrators.  Even so, the court refused to find the "repeat player effect" alone was sufficient to make the arbitration agreement unconscionable.  
Mercuro
, 96 Cal. App. 4
th
 at 178-79.

Here, under NAF Code of Procedure Rule 21, both parties are involved in the selection of the arbitrator.  Hutcherson and Wilson have not shown, nor do we see, how the selection process favors one side more than the other.  And we have been provided with no evidence of how many arbitrators are available in the forum.  Other than vague suggestions of potential bias, which we reject as speculative at best, Hutcherson and Wilson have not shown how the arbitrator would favor the defendants.   

We conclude the addition of the arbitration provision was not substantively unconscionable.

IV.  LACK OF CONSIDERATION

 Hutcherson and Wilson contend the arbitration clause is void for lack of consideration.  In particular, they say that while the card holder is compelled to submit his or her claims to arbitration, SNB is not so bound.  They direct our attention to Section 19 of the amended credit card agreement, which states:

"If you are in default *** we may *** (g) sue you for what you owe and enforce any security interest granted in the merchandise purchased on the Account, consistent with the arbitration clause in section 21; or (h) 
use other lawful remedies
***."  (Emphasis added).

The portion emphasized allows SNB to circumvent the arbitration provision, according to Hutcherson and Wilson.  We disagree.

Subsection (g), which allows SNB to sue a card holder for being in default, explicitly makes the subsection subject to the arbitration provision in section 21.  Although subsection (h) allows SNB to use "other lawful remedies," whatever these may be, we do not read subsection (h) to allow SNB to resort to the court system to obtain these other lawful remedies.  Any action brought in court would fall under subsection (g) and is subject to the arbitration provision of section 21.  Arizona law supports this interpretation.  See 
Shattuck v. Precision-Toyota, Inc.
, 115 Ariz. 586, 589, 566 P.2d 1332, 1335 (Ariz. 1977) ("It is a long-standing policy of the law to interpret a contract whenever reasonable and possible in such a way as to uphold the contract").   

Section 21 explicitly states either party may elect to submit a claim to arbitration and that such arbitration is final and binding on the parties.  We do not see anything in Section 21 that would allow SNB to escape arbitration once a card holder demands arbitration.  Based on our reading of these sections, we reject this contention. 

V.  UCC SECTION 2-207

Hutcherson and Wilson contend section 2-207 of the Uniform Commercial Code (UCC) should be followed.  In particular, they say, under this statute the amended agreement containing the arbitration provision is not a part of the contract between the parties.  In support, they cite 
Duplan Corp. v. W.B. Davis Hosiery Mills, Inc.
, 442 F. Supp. 86, 88 (S.D. N.Y. 1977) and 
Supak & Sons Manufacturing Co., Inc.
, 593 F.2d 135, 136 (4th Cir. 1979).  

Arizona has adopted chapter 2 of the UCC and named the chapter the Uniform Commercial Code-Sales.  Ariz. Rev. Stat. Ann. § 47-2101 
et
 
seq
. (West 1997).  Section 47-2207, which corresponds to UCC section 2-207, dictates when additional terms in an acceptance or confirmation become a part of the agreement.  

However, section 47-2207 is not applicable to the credit card agreement at issue here.  This section, like the remainder of Arizona's Uniform Commercial Code-Sales, applies only to “transactions in goods.”  Ariz. Rev. Stat. Ann. § 47-2102 (West 1997).  Similarly, 
Duplan
 and 
Supak
 are inapplicable here.  In both of those cases, the courts were dealing with a contract for the sale of goods, to which Arizona’s Uniform Commercial Code-Sales would apply.   

VI.  GOOD FAITH AND FAIR DEALING

Hutcherson and Wilson's remaining contention is that the amendment adding the arbitration clause was a “unilateral amendment[, which] contravened the law of objective reasonableness and was an affront to the covenant of good faith and fair dealing.”  They contend the California Appellate Court struck down a similar amendment to a credit card agreement in 
Badie v. Bank of America
, 67 Cal. App. 4th 779 (1998). 

In 
Badie
, the original contract contained a provision notifying card holders the bank could change the terms of the contract at any time.  The court said this provision allowed the bank only to modify existing terms and not add completely new ones.  Based on this provision, the court concluded the parties did not intend to allow the bank to unilaterally add an arbitration provision to the contract.  
Badie
, 67 Cal. App. 4
th
 at 798-806.  

We do not agree with 
Badie
.  The original credit card agreement contained a “change of terms” provision notifying card holders SNB could change the terms of the agreement at any time.  Although we agree with 
Badie
 that the parties did not intend for SNB to make additions or deletions to the credit card agreement that would essentially convert the credit card agreement to something else entirely, we do not read the "change of terms" provision so narrowly as to preclude an amendment containing an arbitration provision.  See 
Beneficial
, 214 F. Supp. 2d at 686-87 fns. 8 & 9 (rejecting 
Badie
 and concluding change of terms provision allowed the addition of an arbitration agreement).

Other than the reference to 
Badie
, Hutcherson's and Wilson's arguments on this contention are in substance the same as those raised in their procedural unconscionability arguments.  For the reasons stated above, we reject this contention as well.

CONCLUSION

For the foregoing reasons, we conclude the trial court erred in denying the motions to stay the proceedings and compel arbitration.  We reverse the trial court's order and remand this cause for further proceedings consistent with this opinion.

Reversed and remanded.

SOUTH, P.J., and HOFFMAN, J., concur.

FOOTNOTES
1:
Although in 
Maxwell
, the court's analysis was made in the context of the codification of the doctrine of unconscionability under the Uniform Commercial Code (UCC) section 2-302, the court acknowledged the existence of the doctrine before the codification.  Moreover, other Arizona courts have applied 
Maxwell
's unconscionability analysis in cases not falling under the UCC.  See, 
e.g.
, 
In re the Marriage of Pownall
, 197 Ariz. 577, 5 P.3d 911 (Ariz. App. 2000) (applying 
Maxwell
's unconscionability analysis to a premarital agreement).

2:
In 
Maxwell
, the court left unanswered the question of whether a finding of procedural unconscionability alone requires a conclusion that the contract is unenforceable.  
Maxwell
, 184 Ariz. at 90, 907 P.2d at 59.  Because we find the arbitration provision is not procedurally unconscionable, we need not address this unresolved question.