No. 2--07--0802        Filed: 5-19-08

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| JUDITH WILLIAMS, Individually and as Independent Executor of the Estate of Kenneth Williams, | ) ) ) | Appeal from the Circuit Court of Jo Daviess County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 06--L--22 |
| | ) | |
| JO-CARROLL ENERGY, INC., | ) | |
| | ) | |
| Defendant-Appellee | ) | |
| | ) | Honorable |
| (BP Corporation North America, Inc., and | ) | William A. Kelly, |
| ABC Corporation, Defendants). | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Judith Williams, individually and as independent executor of the estate of Kenneth Williams, sued defendant Jo-Carroll Energy, Inc., alleging that stray voltage from its overhead power lines had injured cattle on her dairy farm. Defendant moved to dismiss the action, based on an arbitration clause in its bylaws. The trial court construed the motion as one to stay the proceedings pending arbitration and granted it. Plaintiff appeals, contending that the arbitration clause was both procedurally and substantively unconscionable. We disagree, affirm, and remand for further proceedings.

Plaintiff and her late husband, Kenneth, operated a dairy farm in Elizabeth. Defendant is a cooperative that provides electrical power in northwest Illinois. In 1974, plaintiff and her husband

signed an application for membership and for electrical service. The application provided that it was subject to the "by-laws of the Cooperative, and such rules and regulations as may from time to time be adopted by the cooperative." The bylaws then in effect provided that the application was an agreement to "comply with and be bound by the certificate of incorporation of the Cooperative and these by-laws and any amendments thereto." Article XIV, section 2, of the bylaws provided that the bylaws could be amended by a majority vote of the active members present at any regular or special meeting.

In 2003, defendant proposed to amend its bylaws to include the arbitration provision. Defendant mailed to all members a notice of an annual meeting, including the complete text of the proposed amendment. The clause provides that any "claim or controversy between [defendant] and any Member which arises out of or relates to the provision by [defendant] to the member of electric power or other related services shall, at the request of any such party, be submitted to arbitration." Plaintiff does not deny receiving the notice.

At the meeting, on March 22, 2003, defendant's attorney introduced the arbitration proposal, which was the subject of a question-and-answer session. Ultimately, a majority of the members present approved the amendment. Plaintiff, who also worked for defendant, was at the meeting. However, according to plaintiff's affidavit, she was working at the registration desk and never entered the meeting room.

Plaintiff filed her complaint on December 13, 2006. Defendant moved to dismiss the action, citing the arbitration clause. In response to the motion, plaintiff filed an affidavit averring as follows. As an employee of defendant, plaintiff typically worked the registration tables during the annual meetings and "would not have paid attention to specific matters presented to consumer-

members for voting." She further averred that "it was well understood by the employees and it was even written company policy that if an employee talked to a member of the Board of Directors about anything work-related, the employee in question could be fired." As a result of this "somewhat chilling" work environment, plaintiff did not concern herself "with challenging anything that the Board might set forth as a change in policy or procedure." As plaintiff saw it, "that was their job."

The trial court ordered the parties to submit to arbitration and stayed the court action. The trial court also stayed the action as it relates to defendant BP Corporation North America, Inc. (BP), and found that there was no just reason to delay the enforcement or appeal of its order. Plaintiff timely appeals. BP is not a party to this appeal. A third named defendant, "ABC Corporation," is identified as a "fictitious corporation," and its relationship to this action is not clear.

Before turning to the merits, we briefly clarify the basis of our jurisdiction. The trial court purportedly made a finding of immediate appealability pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)). Plaintiff asserts that jurisdiction is proper pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301). In reality, we have jurisdiction under Supreme Court Rule 307(a)(1), which provides for the immediate appeal of an order granting an injunction (188 Ill. 2d R. 307(a)(1)), because an order compelling arbitration is injunctive. See Salsitz v. Kreiss, 198 Ill. 2d 1, 11-12 (2001).

Plaintiff argues on appeal that the trial court erred by compelling her to arbitrate her dispute with defendant, because the arbitration provision in defendant's bylaws is both procedurally and substantively unconscionable. She argues that the clause is procedurally unconscionable because it was not part of the bylaws when she and her husband signed the membership agreement in 1974; that the agreement was a contract of adhesion as there is no other provider of electrical power in the

area where plaintiff lives; that she was not actually aware of the arbitration provision until after her claim arose; and that she believed a "chilling atmosphere" existed that prohibited defendant's employees from discussing the proposed amendment to the bylaws. Plaintiff believes the arbitration provision is substantively unconscionable because it imposes on her a portion of the costs of a proceeding without giving any indication of what those costs will be and deprives her of her constitutional right to a jury trial.

Defendant responds that the membership agreement was subject to the "by-laws and any amendments thereto" and that defendant properly amended the bylaws pursuant to the bylaws. Defendant further argues that the agreement imposes no unduly burdensome terms on plaintiff and merely designates a particular forum in which to resolve the parties' dispute.

Illinois courts favor using arbitration as a means of settling disputes. Jenkins v. Trinity Evangelical Lutheran Church, 356 Ill. App. 3d 504, 507 (2005). If a valid agreement to arbitrate exists, courts will enforce it. 710 ILCS 5/2(a) (West 2004); Jenkins, 356 Ill. App. 3d at 511-12. Nevertheless, a contract provision will not be enforced if it is unconscionable. Unconscionability may be either procedural or substantive, or a combination of both. Kinkel v. Cingular Wireless, LLC, 223 Ill. 2d 1, 21 (2006). " 'Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it ***.' " Kinkel, 223 Ill. 2d at 22, quoting Razor v. Hyundai Motor America, 222 Ill. 2d 75, 100 (2006). This analysis also takes into account the disparity of bargaining power between the drafter of the contract and the party claiming unconscionability. Razor, 222 Ill. 2d at 100. On the other hand, substantive unconscionability " 'concerns the actual terms of the contract and examines the relative fairness of the obligations assumed' and is indicated by 'contract terms so

one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity.' " Hutcherson v. Sears Roebuck & Co., 342 Ill. App. 3d 109, 121 (2003), quoting Maxwell v. Fidelity Financial Services, Inc., 184 Ariz. 82, 89, 907 P.2d 51, 58 (1995). Whether a portion of a contract is unconscionable is a question of law, which we review de novo. Kinkel, 223 Ill. 2d at 22.

We do not find the arbitration provision in question to be procedurally unconscionable. Plaintiff and her husband signed the membership agreement, which explicitly stated that it was subject to defendant's bylaws. The bylaws provided that a membership agreement was subject to the bylaws then existing or as thereafter amended. Moreover, when the arbitration provision was added, defendant followed the procedure specified in the bylaws for amending the bylaws. The amendment was approved by a majority of the members attending defendant's annual meeting. Defendant provided a notice of the meeting, including the entire text of the proposed amendment. There was simply nothing unconscionable about this procedure.

Citing Razor, plaintiff argues that the arbitration provision was unconscionable because she did not learn about it until long after she signed the membership agreement. In Razor, the plaintiff purchased a new car. The warranty contained a provision excluding consequential damages. The court found the provision unconscionable primarily because the plaintiff was not given a copy of the warranty before she signed the sale contract. The warranty was part of the owner's manual, contained in the car's glove compartment; the plaintiff did not see it until she had driven the car off the lot. Razor, 222 Ill. 2d at 100-01.

Here, by contrast, the membership agreement explicitly stated that it was subject to the bylaws, which in turn stated that they could be amended. Defendant provided notice of the proposed

amendment, which was approved by a majority of the members. Several cases have held that, where an agreement provides that it may be amended, and it is properly amended, a party is bound by the amendment if he or she continues to accept the benefits of the agreement.

In Hutcherson, an arbitration clause that the defendant added to the parties' credit card agreement was found not to be procedurally unconscionable. The original agreement provided that it could be amended and that any amendments would be sent to the customers. "Thus," the court concluded, "the amendment adding the arbitration provision should not have been a surprise." Hutcherson, 342 Ill. App. 3d at 119. The court noted that the notice of the amendment gave the plaintiffs a chance to reject the amendment, but they did not do so. Hutcherson, 342 Ill. App. 3d at 120. Although Hutcherson applied Arizona substantive law due to a choice-of-law provision in the agreement, the supreme court has cited Hutcherson with approval as being consistent with Illinois law. Kinkel, 223 Ill. 2d at 28.

More similar to the present case is Steen v. Modern Woodmen of America, 296 Ill. 104 (1920). There, the defendant association amended its bylaws, effectively denying the plaintiff the right to recover under a life insurance policy. The court held that the plaintiff was bound by the amendment, noting that, where a contract contains an express provision reserving to an organization the right to amend its bylaws, the organization has the right to do so. Where a contract provides that members shall be bound by the rules and regulations "now existing or hereafter enacted" and a member accepts the benefits of the contract, "it is a sufficient reservation of the right in the society to amend or change its by-laws." Steen, 296 Ill. at 111; see also Thomson v. Thomson, 315 Ill. 521, 531 (1925).

Finally, quite similar to this case is Rushing v. Gold Kist, Inc., 256 Ga. App. 115, 567 S.E.2d 384 (2002). There, the court held that the plaintiff was bound by an arbitration clause in the bylaws of the defendant, an agricultural cooperative. It did not matter that the bylaws did not contain the arbitration provision when the plaintiff signed his membership agreement; he agreed to be bound by the existing bylaws and any bylaws "hereinafter in effect." Thus, when the defendant's board of directors amended the bylaws as provided in the bylaws, the plaintiff was bound by the amendment. Rushing, 256 Ga. App. at 118-19, 567 S.E.2d at 387-88; see also McMillan v. Gold Kist, Inc., 353 S.C. 353, 359-60, 577 S.E.2d 482, 485 (S.C. App. 2003) (following Rushing).

Plaintiff complains that the contract was essentially one of adhesion. She had no meaningful choice, she claims, because defendant is the only provider of electrical power where she lives. However, just because a contract is prepared by a party in a superior bargaining position, without allowing the other party to negotiate any terms, does not mean that an included arbitration clause is unconscionable. Zobrist v. Verizon Wireless, 354 Ill. App. 3d 1139, 1148 (2004). Rather, some fraud or similar wrongdoing must be shown to invalidate such a provision as unconscionable. Zobrist, 354 Ill. App. 3d at 1148.

Plaintiff attempts to show wrongdoing by defendant, but those attempts fail. Plaintiff averred in her affidavit that she was not specifically aware of the bylaw amendment adding the arbitration clause. Moreover, a "chilling" work environment dissuaded her from discussing proposed changes in policy or procedure with the board of directors. These allegations fall far short of establishing fraud or other wrongdoing by defendant. Plaintiff does not allege that defendant misled its members about the content of the proposed amendment or that it coerced anyone into voting for it. The record shows that defendant sent the full text of the proposed amendment to its members. Whether plaintiff

was actually aware of the contents of the proposed amendment, or whether she actually voted for or against it, is beside the point. Defendant followed the procedure prescribed in the bylaws for amending the bylaws, and plaintiff does not suggest that that process was flawed. Therefore, we reject plaintiff's argument that the provision is procedurally unconscionable.

Plaintiff also contends that the arbitration clause is substantively unconscionable because it imposes on her a portion of the costs of the proceeding without specifying what those costs might be and because it deprives her of her constitutional right to a jury trial. Courts have uniformly rejected the notion that arbitration clauses are invalid per se as depriving the parties thereto of substantive rights. In Melena v. Anheuser-Busch, Inc., 219 Ill. 2d 135 (2006), our supreme court traced the United States Supreme Court's recent treatment of arbitration clauses, in the context of employment law. The court stated as follows:

"[T]he Court has repeatedly 'rejected generalized attacks on arbitration that rest on "suspicion of arbitration as a method of weakening the protections afforded in the substantive law." ' Green Tree Financial Corp.-[Alabama] v. Randolph, 531 U.S. 79, 89-90, 148 L. Ed. 2d 373, 383, 121 S. Ct. 513, 521 (2000), quoting Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 481, 104 L. Ed. 2d 526, 535-36, 109 S. Ct. 1917, 1920 (1989). The Court has emphasized that 'federal statutory claims may be the subject of arbitration agreements *** enforceable pursuant to the [Federal Arbitration Act] because the agreement only determines the choice of forum.' Equal Employment Opportunity Comm'n v. Waffle House, Inc., 534 U.S. 279, 295 n.10, 151 L. Ed. 2d 755, 770 n.10, 122 S. Ct. 754, 765 n.10 (2002). According to the Court, '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits their resolution in an

arbitral, rather than a judicial, forum.' Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 87 L. Ed. 2d 444, 456, 105 S. Ct. 3346, 3354 (1985)." Melena, 219 Ill. 2d at 143-44.

In other words, merely requiring a party to a contract to litigate a dispute in a particular forum is not inherently unconscionable. However, plaintiff seizes upon language from Kinkel to argue that the arbitration clause here imposes additional, onerous burdens on potential plaintiffs. In invalidating the clause at issue, the Kinkel court listed the circumstances that caused it to invalidate the provision:

> "These circumstances include a contract of adhesion that requires the customer to arbitrate all claims, but does not reveal the cost of arbitration, and contains a liquidated damages clause that allegedly operates as an illegal penalty." Kinkel, 223 Ill. 2d at 42.

Plaintiff then complains that "[t]here is simply no way of anticipating the total amount of costs and fees that one may potentially pay by participating in [defendant's] arbitration process." However, plaintiff reads the single statement from Kinkel too broadly.

In Kinkel, the plaintiff filed a class action challenging provisions in the defendant's standard service contract that required the customer to commit to a minimum service term and pay a $150 penalty if he or she terminated service before the end of the term. The defendant invoked another provision of the service contract that required customers to arbitrate disputes arising from the contract and that prohibited class actions in arbitration. Kinkel, 223 Ill. 2d at 5-8. The applicable American Arbitration Association rules provided that a claimant had to pay one-half of the arbitrator's fees, up to a maximum of $125. Kinkel, 223 Ill. 2d at 9. The supreme court agreed with the plaintiff's argument that the arbitration provision, combined with the class-action prohibition and

the rules imposing a portion of the costs of arbitration on the claimant, made it virtually impossible to vindicate a small claim such as hers. Kinkel, 223 Ill. 2d at 42.

In Kinkel, the court was acutely sensitive to the cost issue because of the relatively small value of the plaintiff's claim. The combined effect of the arbitration provision and the class-action waiver was to insulate the defendant from an entire class of claims. Kinkel, 223 Ill. 2d at 42. Here, plaintiff has not shown that the costs of arbitration will effectively prevent her from litigating her claim. The record contains little if any information about her potential damages. We note that plaintiff's complaint that "[t]here is simply no way of anticipating the total amount of costs and fees that one may potentially pay" applies with equal force to litigation in plaintiff's chosen forum of the circuit court. In fact, the chief difficulty with plaintiff's argument is that it proves too much. If an arbitration clause were considered unconscionable because it failed to predict accurately the total costs the claimant was likely to incur, virtually no arbitration clause would pass muster. Such is not the case.

In Bess v. DirecTV, No. 5--05--0394 (March 18, 2008), the Fifth District noted that an arbitration provision is not rendered inherently unconscionable because some of the arbitration costs will be imposed on the customer. Bess, slip op. at 14. Rather, where a party seeks to invalidate an arbitration provision on the ground that the arbitration would be prohibitively expensive, that party has the burden to show the likelihood of incurring those costs. Bess, slip op. at 14, citing Green Tree Financial, 531 U.S. at 92, 148 L. Ed. 2d at 384, 121 S. Ct. at 522; see also Zobrist, 354 Ill. App. 3d at 1146. Here, plaintiff has not demonstrated that the cost of arbitration would be prohibitively expensive. Moreover, as noted, plaintiff has not demonstrated that the cost of an arbitration hearing will be greater than that of litigating the case in court.

Plaintiff's final contention is that the arbitration provision deprives her of her right to a jury trial. However, the supreme court has rejected the argument that an arbitration clause is unconscionable solely because it deprives a party of the right to a jury trial, holding that the right to a jury trial applies <u>only after it is established that the litigation should proceed before a court</u>. If the claims are properly before an arbitrator pursuant to a valid arbitration agreement, the jury trial right vanishes. <u>Melena</u>, 219 Ill. 2d at 151, citing <u>Caley v. Gulfstream Aerospace Corp.</u>, 428 F.3d 1359, 1371 (11th Cir. 2005). Accordingly, we reject plaintiff's contention that the arbitration provision is substantively unconscionable.

The order of the circuit court of Jo Daviess County is affirmed, and the cause is remanded.

Affirmed and remanded.

BYRNE, P.J., and BOWMAN, J., concur.