**Shifra M. STONE, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**GOLDEN WEXLER & SARNESE, P.C., Sharinn & Lipshie, P.C., and Capital One Bank, Defendants.**

No. 03CV1136(RJD)(JMA).

United States District Court, E.D. New York.

Sept. 30, 2004.

Abraham Kleinman and Lawrence Katz, Katz & Kleinman, Uniondale, NY, for Plaintiff.

Patricia K. Rech, Morenus, Cardoza & Conway, Goren & Brandman, Melville, NY, for Defendant Golden, Wexler & Sarnese P.C.

Stephen R. Hill, Hill & Associates, Mineola, NY, for Defendant Sharinn & Lipshie, P.C.

Matthew P. Previn and Eric J. Mogilnicki, Wilmer, Cutler & Pickering LLP, New York, NY, for Defendant Capital One Bank.

## MEMORANDUM & ORDER

DEARIE, District Judge.

Plaintiff brings a class action against defendants alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* Defendant Capital One Bank moves to stay the proceeding in favor of arbitration. For the reasons discussed below, the motion is denied.

## BACKGROUND

The material facts of the case are undisputed. Plaintiff Stone opened a credit card with Capital One Bank ("Bank") in 1999. Her Customer Agreement with the Bank contains a provision that reads as follows:

> Changes in Terms. We may amend or change any part of your Agreement, including the periodic rates and other charges, or add or remove requirements at any time. If we do so, we will give you notice if required by law of such amendment or change. Changes to the annual percentage rate(s) will apply to your account balance from the effective date of the change, whether or not the account balance included items billed to the account before the change date and whether or not you continue to use the account. Changes to fees and other charges will apply to your account from the effective date of the change.

LeBlanc Decl. Ex. 1. In October 2001, the Bank mailed plaintiff a notice indicating that, unless plaintiff opted out within a year, the Bank would add an arbitration clause to the Customer Agreement. Le Blanc Decl. Ex. 3. The notice included a "rejection coupon" and provided that if the Bank did not receive the coupon by September 30, 2002, the arbitration clause would become a binding part of the Customer Agreement. Le Blanc Decl. Ex. 3. It is not clear from the record whether the

notice was included with plaintiff's monthly bill or was mailed separately.

Plaintiff acknowledges that she did not return the coupon but asserts that she was unaware of the arbitration provision until the commencement of the litigation. Although she did not make any new charges on her account after the addition of the arbitration clause, she continued to carry a balance. Le Blanc Decl. Ex. 2.

## DISCUSSION

Federal public policy favors arbitration, but not at the price of fairness and common sense. Courts may not force parties to arbitrate disputes if the parties have not entered a valid agreement to do so. As the Supreme Court has stressed, "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (emphasis added). Courts apply state contract law to determine whether a binding agreement to arbitrate exists. *Id.* at 944, 115 S.Ct. 1920; *Kurz v. Chase Manhattan Bank USA,* 319 F.Supp.2d 457, 461 (S.D.N.Y.2004). The choice of law provision of the Customer Agreement at issue here designates Virginia law.[1]

To be sure, a party may propose, and the other party may accept, an alteration to an existing contract. However, such modifications are binding only if there is express or implied assent to the change by both parties. *Stanley's Cafeteria, Inc. v. Abramson,* 226 Va. 68, 306 S.E.2d 870, 873 (1983). Absent express consent, "contracting parties, through a course of dealing, may evince a mutual intent to modify the terms of their contract. The circumstances surrounding the conduct of the parties must be sufficient to support a finding of mutual intention that the modification be effective and such intention must be shown by clear, unequivocal, and convincing evidence, direct or implied." *Reid v. Boyle,* 259 Va. 356, 527 S.E.2d 137, 145 (2000). *See also Gustafson v. Southland Life Ins. Co.,* 885 F.Supp. 854, 858 (E.D.Va.1995) (insurance company implicitly assented to modification of contract when it issued a new insurance policy with prior policy's effective date and number and thereby ignored the year-long "waiting period" that otherwise prevented the issuance of the new policy).

It is undisputed that plaintiff made no express, affirmative assent to the addition of the arbitration clause. There is also little evidence to suggest that plaintiff implicitly consented, much less the "clear, unequivocal, and convincing evidence" required under Virginia law. Plaintiff never used the arbitration procedure. Indeed, plaintiff contends that she was unaware of the clause until defendant filed the present motion. Therefore, the arbitration clause does not constitute a binding modification under general principles of Virginia contract law. *See Stanley's Cafeteria,* 306 S.E.2d at 873 ("the circumstances surrounding the conduct of the parties must be sufficient to support a finding of a mutual intention that the modification be effective") (internal citations omitted).

Indeed, defendant does not argue that position. Rather, defendant argues that the Customer Agreement's change-in-terms provision provides the authority for such an amendment. In essence, the Bank argues that as long as it follows the proce-

1. While plaintiff argues that perhaps New York law should apply, she concedes that the result would be materially the same under either New York or Virginia law. Plaintiff's Memo in Opposition at p. 2. Thus, the Court will enforce the choice of law provision.

dure outlined in that provision, any change it makes, regardless of substance, will bind all cardholders. Plaintiff, however, contends that such a limitless scope to the change-in-terms clause renders the clause unconscionable and the underlying contract illusory. Thus, the question presented is whether the parties intended the change-in-terms provision to be sufficiently broad to authorize the addition of significant terms, including an arbitration clause.

## A. Defendant's Position

The Bank contends that, although Virginia courts have not directly addressed this issue, there are a number of cases allowing the addition of an arbitration clause pursuant to change-in-terms provisions. *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, 265 F.Supp.2d 385 (S.D.N.Y. 2003); *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574 (W.D.N.C.2000). Notably, however, many of the opinions cited in defendant's brief rely on state statutes that specifically authorize credit card companies to make unilateral changes to the underlying credit agreement. *See, e.g.*, 5 Del. C. § 952(a) (authorizes addition of arbitration clause through this method). Defendant cites no similar Virginia statute and the Court has not found one.

There are, however, a number of courts that have enforced arbitration clauses without relying on explicit statutory authorization. *See, e.g., Hutcherson v. Sears Roebuck & Co.*, 342 Ill.App.3d 109, 276 Ill.Dec. 127, 793 N.E.2d 886 (2003) (Arizona law); *Bank One, N.A. v. Coates*, 125 F.Supp.2d 819 (S.D.Miss.2001), aff'd without opinion, 34 Fed.Appx. 964, 2002 WL 663804 (5th Cir.2002) (Ohio law); *Bank One, N.A. v. Williams*, No. 301CV24DD, 2002 WL 1013161, 2002 U.S. Dist. LEXIS 27217 (N.D.Miss. April 30, 2002); *Bank One, N.A. v. Harris*, No. 00–665LN, 2001 U.S. Dist. LEXIS 9615 (S.D.Miss. January 2, 2001), aff'd without opinion, 2002 U.S.App. LEXIS 7759 (5th Cir. April 5, 2002); *Beneficial National Bank v. Payton*, 214 F.Supp.2d 679 (S.D.Miss.2001); *Herrington v. Union Planters Bank, N.A,* 113 F.Supp.2d 1026 (S.D.Miss.2000), aff'd without opinion, 265 F.3d 1059, 2001 WL 872799 (5th Cir.2001); *SouthTrust Bank v. Williams*, 775 So.2d 184 (Ala.2000) (Alabama statute permits unilateral amendment but does not address whether arbitration clause can be added this way); *Stiles v. Home Cable Concepts, Inc.*, 994 F.Supp. 1410 (M.D.Ala.1998) (relying in part on Alabama and Utah statutes that permit unilateral amendment but do not refer explicitly to whether that method can be used to add an arbitration clause).

The prototypical case in line with defendant's position is *Coates*. There, the bank mailed Coates a notice of a proposed arbitration clause with a one month opt-out period. Coates admitted that he did not reject the amendment, but argued that the arbitration provision was not binding because it was procured through fraud, was substantively unconscionable, and constituted an unenforceable waiver of his right to a jury trial. *Coates*, 125 F.Supp.2d at 828. The court rejected each argument, applying Ohio law. *See also Harris*, 2001 U.S. Dist. LEXIS 9615 at *28–33, *42–50 (also applying Ohio law and rejecting similar arguments).

Coates also argued that the change-in-terms provision did not authorize the addition of an arbitration clause, as compared to changes in the fees, interest rates, or finance charges referred to in the change-in-terms provision itself. The court treated this as raising a claim of procedural unconscionability. The court emphasized that the notification of the impending amendment used clear language and a legible, though small, font. *Coates*, 125 F.Supp.2d at 830–32. *See also Harris*,

2001 U.S. Dist. LEXIS 9615 at *33–37, *42 (addressing similar issues in the context of a claim construed to raise issues of procedural unconscionability). The court concluded that Coates was bound by the arbitration clause because the original agreement, which Coates had signed, authorized the bank to make amendments without limitation and the bank complied with its change-in-terms provision. Although the *Coates* court noted that there is an Ohio statute authorizing unilateral change to credit card agreements, the court did not rely on that statute to reach its conclusion.

### B. Plaintiff's Position

There are also a number of cases that support plaintiff's arguments against enforcement of the arbitration clause. *See, e.g., Perry v. FleetBoston Financial Corp.,* No. 04–507, 2004 WL 1508518, 2004 U.S. Dist. LEXIS 12616 (E.D.Pa. July 6, 2004) (Rhode Island law); *Sears Roebuck and Co. v. Avery,* 593 S.E.2d 424, 426 (N.C.Ct. App.2004) (applying Arizona law and finding that change-in-terms provision allowed defendant only to "make changes relating to subjects already addressed in the original agreement" and therefore did not authorize addition of arbitration clause); *Myers v. MBNA America,* No. 00–163, 2001 U.S. Dist. LEXIS 11900 (D.Mont. March 28, 2001); *Discover Bank v. Shea,* 362 N.J.Super. 200, 827 A.2d 358 (2001) (finding amendment adding arbitration clause not binding, even though New Jersey law permits unilateral changes, because addition of arbitration clause was not the type of unilateral change contemplated by the parties when they entered the original agreement); *Long v. Fidelity Water Systems, Inc.,* No. C–97–20118, 2000 WL 989914, *3, 2000 U.S. Dist. LEXIS 7827, * 9 (N.D.Cal. May 24, 2000) (change in term provision could not be "reasonably construed as explicitly allow-

ing the insertion of an arbitration clause"); *Badie v. Bank of America,* 67 Cal.App.4th 779, 79 Cal.Rptr.2d 273 (1998).

The leading case favoring plaintiff is *Badie.* In *Badie,* the defendant bank had added an arbitration clause to its credit card agreements, giving notice of the addition in the body of a half-page "bill stuffer" mailed to the cardholders with their monthly statement. The bank made the addition pursuant to a change-in-terms provision that permitted the bank to alter or terminate terms or conditions in the agreement upon notice, if required by law, to the cardholders. The bank did not offer an opportunity to reject the addition of the arbitration clause.

As in *Coates,* the defendant bank argued that because it followed the procedure prescribed by its change-in-terms provision, the new ADR clause bound the cardholders. *See Badie,* 79 Cal.Rptr.2d at 281 (The bank "appear[ed] to contend that regardless of the nature of a modification, the new ADR provision [was] a valid part of the contract as long as the prescribed procedure for making the modification was followed."). Unlike the court in *Coates,* the *Badie* court did not analyze this issue in terms of procedural unconscionability. Framing the issue as one of basic contract interpretation, the court analyzed whether the change-in-terms provision authorized the addition of an arbitration clause. *Id.* at 280 ("Whether the Bank's customers can be said to have agreed to allow the Bank to add the ADR clause to those agreements simply by sending them notice of the change depends, as a threshold matter, on the meaning and scope of the change of terms provision itself.").

The court rejected the bank's contention that its actions were simply a type of contract modification. The court noted that standard contract modification cases

involve changes that were "specifically identified in the original contracts as changes that might be made in the future under certain circumstances." *Id.* at 281. In *Badie,* as here, the bank sought to "add an entirely new *kind* of term to the original account agreements"—agreements "which did not include any provision regarding the method or forum for resolving disputes." *Id.* at 283 (emphasis in original). Thus, the court found that principles of contract modification did not support the bank's position.

The court next addressed whether the bank's attempt to exercise its discretionary power under the change-in-terms provision conformed with the duty of good faith and fair dealing. The court concluded that:

the Bank reserved to itself the unilateral and nonnegotiable right to vary every aspect of the performance required by the parties to the account agreements. The Bank's interpretation of how broadly it may exercise that right, with no limitation on the substantive nature of the changes it may make as long as it complies with the *de minimis* procedural requirement of 'notice,' virtually eliminates the good faith and fair dealing requirement from the Bank's relationship with its credit account customers . . .

*Id.* at 284. The court further noted that an interpretation of the clause as granting the bank unbounded authority to make changes, without constraints on the substance of those changes, "would open the door to a claim that the agreements are illusory." *Id.* at 284–85. *See also id.* ("the fact that one of the parties reserves the power of varying the price or other performance is not fatal ... if the exercise of this power is subject to prescribed or implied limitations, as that the variation must be in proportion to some objectively determined base or must be reasonable.") (quot-

ing *Automatic Vending Co. v. Wisdom,* 182 Cal.App.2d 354, 6 Cal.Rptr. 31 (1960) (quoting Corbin on Contracts, § 98, p. 311)). Thus, the court concluded that the "universe of terms included in the original agreement" necessarily provided an implied limitation on the bank's power to make unilateral changes to the agreement. *Id.* at 285, 6 Cal.Rptr. 31. *But see Hutcherson,* 276 Ill.Dec. 127, 793 N.E.2d at 900 ("Although we agree with *Badie* that the parties did not intend for [defendant] to make additions or deletions to credit card agreement that would essentially convert the credit card agreement to *something else entirely,* we do not read the 'change of terms' provision so narrowly as to preclude an amendment containing an arbitration provision.") (emphasis added).

As here, the change-in-terms provision and the credit agreement as a whole addressed issues such as finance charges, periodic rates, membership fees, payments, and credit limits. The terms, the court found, all concerned issues central to the credit relationship. Collateral issues, including methods and fora for dispute resolution, were not addressed in the text of the agreement. Applying California law, the court concluded that "the object, nature and subject matter of these agreements strongly support the conclusion that the customers" did not intend "to give the Bank the power in the future to terminate its customers' existing right to have disputes resolved in the civil justice system, including their constitutionally based right to a jury trial." *Id.* at 288. Thus, the court concluded that the change-in-terms provision allowed the bank only to alter items such as fees, grace periods, or interest rates. *Id.* at 289. The court noted that to hold otherwise would require the existence of a valid and unambiguous waiver of the right to a trial by jury. The court found that the change-in-terms provision could not be read to constitute such a waiver.

Many of the courts that reach the opposite holding distinguish *Badie* on two issues: (1) the defendant in *Badie* did not allow customers to opt out and (2) the change-in-terms provision did not explicitly allow *additions* to the agreement, as opposed to alterations or deletions. *See, e.g., Harris*, 2001 U.S. Dist. LEXIS 9615 at *41. However, this Court finds these differences not material to the outcome in *Badie*. As the *Badie* court itself noted, the material issue was what types of *terms* the contract allowed the bank to change, not whether the bank could add new terms. *Id.* at 284–85. At its core, *Badie* held that the arbitration clause was not binding because it was not the type of change contemplated by the parties when they signed the original contract. Notably, a number of courts have followed the *Badie* reasoning even when the credit card agreements allowed additions and cardholders were given an opportunity to opt out from the proposed arbitration clause. *See, e.g., Perry*, 2004 WL 1508518, 2004 U.S. Dist. LEXIS 12616; *Myers*, 2001 U.S. Dist. LEXIS 11900.

For example, in *Perry*, the court looked to general principles of Rhode Island contract law to determine whether a change-in-terms provision, nearly identical to the one at issue here, authorized the unilateral addition of an arbitration clause when the underlying contract did not address matters of dispute resolution. The court found the change-in-terms provision ambiguous, as had the *Badie* court, and construed the provision against the drafter because it was a standardized contract. The court concluded that the change-in-terms provision "applies only to those terms already contained or contemplated in the original agreement" and therefore did not authorize the addition of an arbitration clause. *Id.* at *4. The court emphasized that the original agreement made no mention of dispute resolution, and

therefore "nothing in these terms would alert a consumer to the fact that [the defendant] might later impose a term abrogating their rights to pursue disputes in a civil forum." *Id.*

The court in *Myers* relied on similar reasoning to reject the addition of an arbitration clause to a credit card agreement. There, the bank had offered the cardholder an opportunity to opt out. However, the court concluded that the cardholder's silence, or failure to reject, did not constitute consent to the new term. Furthermore, the court found that the added arbitration clause was "not foreshadowed in the original Agreement" and was therefore not authorized by the change in term provision. 2001 U.S. Dist. Lexis 11900 at *14. The court noted that if it accepted the bank's argument that the plaintiff had " 'agreed' to arbitration when she agreed to allow MBNA to amend the Agreement, . . . there would be no reason to stop at arbitration. MBNA could 'amend' the agreement to include a provision taking a security interest in Myers' home or requiring Myers to pay a penalty if she failed to convince three friends to sign up for MBNA. Such provisions were as much within the agreement at the outset of their relationship as the arbitration provision." *Id.* at * 14–15.

## C.  Virginia Law

After reviewing the relevant cases, the Court agrees with *Badie* that the material issue is not necessarily whether the process of the amendment was unconscionable, as suggested in *Coates*, but whether the defendant had the *authority* to undertake such an amendment in the first place. That is a question of contract interpretation governed by Virginia law.

▮ There appears to be no Virginia law that speaks directly to the issues raised in this case. However, this Court's review of Virginia cases on contract inter-

pretation and modification reveals that Virginia courts apply the same principles relied upon by the California court in *Badie*. Virginia subscribes to the basic legal principle that contracts must be reasonably certain, definite, and understandable to be enforced in court. *Reid*, 527 S.E.2d at 143; *Progressive Constr. Co. v. Thumm*, 209 Va. 24, 161 S.E.2d 687 (1968); *Smith v. Farrell*, 199 Va. 121, 98 S.E.2d 3 (1957). If the contract is capable of more than one interpretation, it is ambiguous and must be construed against the drafter of the agreement. *Donnelly v. Donatelli & Klein, Inc.*, 258 Va. 171, 519 S.E.2d 133 (1999); *Martin & Martin Inc. v. Bradley Enterprises, Inc.*, 256 Va. 288, 504 S.E.2d 849, 851 (1998). Because both plaintiff's and defendant's interpretations of the change-in-terms provision are plausible, the Court finds that the clause is ambiguous. Thus, it is for the Court to interpret the clause.

■ "Ascertainment of the intent of the contracting parties is the cardinal rule in the construction of agreements. To do that the court will put itself in the situation occupied by the parties and then look to the language employed, the subject matter and purpose of the parties, and all other pertinent circumstances." *Hall v. MacLeod*, 191 Va. 665, 62 S.E.2d 42, 44 (1950). *See also Jones v. Gammon*, 140 Va. 704, 125 S.E. 681 (1924). "Where a contract admits of two constructions, the general rule is that the court ought to adopt that which is most equitable and which will not give an unconscionable advantage to one party over the other. The words of a contract will be given a reasonable construction, where it is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and which will not give one of them an unfair or unreasonable advantage over the other." *Allemong v. Augusta National Bank*, 103 Va. 243, 48 S.E. 897, 898–99 (1904) (internal quotations and citations omitted). "All

written instruments must be read as a whole in order to gather the intention of the parties, and in case of doubt language is to be taken most strongly against the party using it. In *White v. Sayers*, 101 Va. 821, 45 S.E. 747 [1903], it is said: 'In the construction of a contract the whole instrument is to be considered; not any one provision only, but all its provisions; not the words merely in which they were expressed, but their object and purpose, as disclosed by the language, by the subject matter, and the condition and relation of the parties.'" *Epes' Administrator v. Hardaway*, 135 Va. 80, 115 S.E. 712 (1923). The contract and the change-in-terms provision are constrained by the covenant of good faith and fair dealing. *Ward's Equipment, Inc. v. New Holland North America, Inc.*, 254 Va. 379, 493 S.E.2d 516 (1997).

■ With these principles in mind, the Court turns to analyzing whether the change-in-terms provision in plaintiff's Customer Agreement was such that plaintiff should have anticipated that the Bank would change the method and forum for resolving disputes. The provision in the Customer Agreement reads as follows:

> Changes in Terms. We may amend or change any part of your Agreement, including the periodic rates and other charges, or add or remove requirements at any time. If we do so, we will give you notice if required by law of such amendment or change. Changes to the annual percentage rate(s) will apply to your account balance from the effective date of the change, whether or not the account balance included items billed to the account before the change date and whether or not you continue to use the account. Changes to fees and other charges will apply to your account from the effective date of the change.

LeBlanc Decl. Ex. 1. The surrounding sections of the Customer Agreement address

such topics as finance charges, credit limits, periodic statements, and membership fees. *Id.*

The Court is persuaded that there is nothing in the Customer Agreement that suggests that plaintiff intended to grant the Bank such latitude. There is no mention of dispute resolution mechanisms. Instead, the Customer Agreement as a whole defines the key financial aspects of the relationship between the cardholder and the Bank. The Court agrees with the *Badie* court that the terms discussed in the change-in-terms clause must supply the universe of terms which could be altered or affected pursuant to the clause. To hold otherwise would permit the Bank to add terms to the Customer Agreement without limitation as to the substance or nature of such new terms. There is nothing to suggest that plaintiff intended to give such unlimited power to the Bank, or that the law would sanction such a grant.

A narrow interpretation of the change-in-terms provision is the most reasonable and most consonant with Virginia law. Under this interpretation, the change-in-terms provision does not authorize the Bank to unilaterally add an arbitration clause.[2] Thus, the arbitration clause does not bind plaintiff.

## CONCLUSION

The Court appreciates defendant's policy arguments in favor of permitting this type of amendment to a credit agreement. To be sure, flexibility is important to the credit industry, since credit card companies are parties to long-term contracts with countless customers. To require companies to obtain explicit consent to every change in the interest rate or finance charge would significantly burden the industry. This is precisely the type of flexibility permitted by the Bank's change-in-terms provision, which allows unilateral changes or additions concerning periodic rates, fees, and other financial aspects of the contract. However, the type of change to cardholders' legal rights represented by the addition of an arbitration clause simply does not come within the bounds of that narrowly drawn provision. *See Perry,* 2004 WL 1508518, *3–4, 2004 U.S. Dist. LEXIS 12616, *13–14 (noting policy arguments in favor of flexibility but concluding that the language of the change-in-terms provision at issue there permitted changes only to the types of terms previously identified in the contract).

Clearly, the Bank may seek to add an arbitration clause to its contracts. However, it cannot do so based on the authority granted it in the change-in-terms provision as it exists now or under Virginia law. Defendant claims that it would be "particularly improper" for the Court to deny enforcement of the arbitration provision because the "right to elect arbitration ... *benefits* consumers." Def. Supplemental Brief at 7, n. 6 (emphasis in original). The arbitral forum may indeed benefit both consumers and credit card companies. However, the Court notes that nothing prevents the parties from enjoying such benefits by entering a valid agreement to arbitrate once a dispute has arisen.

For the foregoing reasons, defendant's motion to stay the proceedings in favor of arbitration is denied.

SO ORDERED.

---

**2.** Defendant claims that the law forbids the Court from "disfavoring" provisions for arbitration, as compared to other types of clauses. However, the Court is not doing so. Based on the reasoning here, the Court would strike other types of wholesale changes whose subjects were not the type discussed in the change-in-terms provision.