Filho v. Safra National Bank of New York

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 25th day of July, two thousand twelve.

PRESENT: JOSEPH M. McLAUGHLIN,
SUSAN L. CARNEY,
CHRISTOPHER F. DRONEY,
*Circuit Judges.*

---

DELIO ALOISIO MATTOS FILHO,
*Plaintiff-Appellant,*

v.                                                              No. 11-2651-cv

SAFRA NATIONAL BANK OF NEW YORK,
*Defendant-Appellee.*

---

FOR APPELLANT:          Philip A. Byler (Andrew T. Miltenberg, *on the brief*), Nesenoff & Miltenberg, LLP, New York, NY.

FOR APPELLEE:           Barry R. Fischer (Eric S. Waldman, *on the brief*), The Barry Fischer Law Firm LLC, New York, NY.

Appeal from the United States District Court for the Southern District of

New York (John F. Keenan, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is VACATED and the case is REMANDED to the district court for further proceedings.

Plaintiff-Appellant Delio Aloisio Mattos Filho appeals from the district court's order granting the motion of Defendant-Appellee Safra National Bank of New York ("SNB" or "the Bank") to compel arbitration, and dismissing Filho's claims against the Bank without prejudice in favor of arbitration proceedings. We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference here only as necessary to explain our decision.

At issue on this appeal is whether Filho is contractually bound to arbitrate his claims against the Bank. The terms and conditions of the banking relationship that Filho entered into when he opened an account at SNB in 2002 were embodied in a document entitled "International Banking Terms and Conditions" ("IBTC"). It did not contain a provision requiring arbitration. An SNB form reflecting terms imposed in or about 2005 and entitled "General Terms and Conditions" ("GTC") did contain such a provision.

The Bank maintains that Filho is bound by the GTC's arbitration provision. The IBTC contained a paragraph ostensibly authorizing the Bank unilaterally to change the terms of that agreement, and, because the IBTC included a dispute resolution provision—albeit one that contemplated litigation in local courts—the Bank argues it was entitled to put in place a new agreement, the GTC, simply declaring (among other things) that arbitration would henceforth be the sole

2

method of dispute resolution available to account holders. Although Filho maintains (and the Bank does not dispute) that he never received actual notice of the Bank's imposition of the GTC and the new arbitration requirement, the Bank contends that he must be deemed to have agreed to arbitration. The Bank reasons that Filho is bound by the GTC's provision because, when he opened his account, he expressly accepted that in lieu of giving actual notice to him of changes to terms and other matters, the Bank would hold all its mail related to his account for him, and Filho agreed to be bound by announcements in documents so held, whether he saw those documents or not.

The factual record before the district court, and on which we base our decision, was limited to the exhibits submitted by the parties in support of and opposition to SNB's motion to compel arbitration. As relevant to this appeal, these exhibits included only: the IBTC; a Bank form (the "Special Services Agreement") signed by Filho when he opened his account; a version of the GTC bearing three different dates; and an affidavit submitted by Filho. After hearing argument on the Bank's motion to compel arbitration—but without conducting an evidentiary hearing—the district court granted the motion, adopting the Bank's position that Filho had constructive notice of the GTC, and that the Bank was entitled to impose arbitration on Filho through its putative delivery of the GTC to Filho's held mail.

The Supreme Court has observed that consent is the foundation of arbitration, *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773-74 (2010), and we have emphasized that a party may be compelled to arbitrate a

3

dispute only if he or she has agreed to arbitration, *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002). We review *de novo* a district court's decision as to whether parties have reached such an agreement, *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26 (2d Cir. 2002), and we apply state law principles governing the formation of contracts to make this determination, *Bell*, 293 F.3d at 566. "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing 9 U.S.C. § 4). For the reasons set forth below, we conclude that such a trial is necessary here.

Filho, who resides in Brazil, maintains that he did not receive constructive notice of the addition of the arbitration provision to the terms governing his account,[1] and that therefore he cannot be deemed to have agreed to arbitration. The record shows that Filho signed the Special Services Agreement, in which he agreed to forgo delivery of mail to him in South America in favor of having his mail held by SNB.[2] Paragraph twelve of the IBTC stated that a customer shall be deemed to have received mail held by the Bank for later pickup, and will be charged

---

[1] We disagree with the district court's assertion that Filho did not challenge the adequacy of the Bank's delivery of the GTC in proceedings before that court. Filho argued in his opposition to the Bank's motion to compel arbitration that he never received the GTC and that it was not in his held mail, and his affidavit made this same representation.

[2] Filho claims he signed the Special Services Agreement without knowing its terms, but as he does not dispute the authenticity of his signature, he is properly charged with knowledge of the terms of the document. *See Consol. Edison Co. of N.Y. v. United States*, 221 F.3d 364, 371 (2d Cir. 2000). Likewise, although Filho claims that the Bank did not provide him a copy of the IBTC until he retrieved one from his held mail in 2009, by signing the Special Services Agreement Filho acknowledged that he had received and agreed to the IBTC. He cannot now reject that acknowledgment.

4

with any terms contained in documents so delivered.  IBTC ¶ 12, Fischer Decl. Ex. 1, at 8.  As noted, SNB argues on appeal, as it did in the district court, that these documents alone establish that Filho must be deemed to have received notice of the GTC and is therefore bound by the GTC's arbitration requirement.

To avail itself of the benefits of the IBTC's held mail provision, however, the Bank must first demonstrate by a preponderance of the evidence that it complied with the IBTC's procedural terms for amending the terms of the banking relationship and delivering and storing held mail.  Under the IBTC, any change to its terms became effective ten days after the Bank actually delivered notice of the change to the customer or "otherwise [made] notice of such change . . . available to [the customer]."  IBTC ¶ 28, Fischer Decl. Ex. 1, at 12.  The IBTC further provided that correspondence held by SNB was to be deemed delivered to a customer "on the date which appears on the correspondence or on the mailing list held [by SNB]."  IBTC ¶ 12, Fischer Decl. Ex. 1, at 8.

The record here is devoid of any showing by the Bank that it met its obligations under paragraph 12 of the IBTC.  The record contains no "correspondence" or "mailing list" demonstrating that the GTC containing the new arbitration provision was mailed to customers and, if so, when it was placed in Filho's held mail.  The record version of the GTC bears no indication that it was placed in Filho's held mail, or of on what date the GTC was intended by the Bank to be effective.  In fact, different pages of the GTC bear different dates.  *See* GTC ¶¶ 9-13, Fischer Decl. Ex. 2, at 18-22.  Nor did the Bank provide any sworn statement

5

regarding its standard business practices with regard to effecting notice of changes to account terms generally or its imposition of the GTC in particular that might serve as a basis for concluding that delivery in this case was duly made. And Filho maintains that his held mail, when retrieved by him, did not contain a copy of the GTC.

It is true that the IBTC authorized SNB to destroy any documents left in a customer's held mail and not collected within two years of delivery. The Bank suggests that it may have destroyed the 2005 GTC and other relevant documents in the period between their deposit and Filho's attempt to retrieve them in September 2009. But, in his affidavit, Filho stated that when he finally retrieved his held mail, the collected documents included a copy of the 2002 IBTC, but not the later-issued GTC. This unexplained discrepancy, combined with the dearth of evidence about the Bank's relevant actions, leaves no reasonable basis from which to conclude that the GTC was ever placed in Filho's held mail. Despite the Bank's argument to the contrary, Filho's apparent persistent disregard of his held mail over an extended period does not excuse the Bank from its obligation to demonstrate that it observed the conditions established for effecting delivery and altering the agreement.

In sum, the present record provides inadequate support for the conclusion that the Bank constructively delivered the GTC to Filho via his held mail. We therefore hold that Filho has raised genuine questions of fact as to whether he may properly be deemed to have agreed to arbitrate his dispute with the Bank, and that these questions warrant a trial. *See* 9 U.S.C. § 4; *Bensadoun*, 316 F.3d at 175; *cf.*

6

*Specht*, 306 F.3d at 28 (concluding that existence of agreement to arbitrate could be determined as a matter of law on the ample record before the Court in that case, but that remand may be appropriate in cases with a less-developed record).

In addition to his constructive delivery challenge, Filho argues that he cannot be held to the GTC's arbitration provision because, by instituting the GTC, the Bank tried to impose on him an entirely new contract, not merely an amended version of the IBTC.[3] He also maintains that an arbitration requirement is not among those terms that the Bank could unilaterally impose on customers pursuant to the IBTC. Unable as we are to discern from the present record the process by which SNB replaced the IBTC with the GTC or to reach a conclusion about the alleged constructive delivery of the GTC to Filho, we do not address these questions in the instant appeal, and leave them for the district court to consider on a more fully-developed record.[4]

---

[3] Although the IBTC permitted SNB to "change *these Terms and Conditions*," IBTC ¶ 28, Fischer Decl. Ex. 1, at 12 (emphasis added), it is not self-evident that the IBTC authorized the Bank's unilateral imposition of an entirely new contract.

[4] The record does not reveal whether the Bank afforded customers any time beyond the ten days post delivery before which the new terms became effective, IBTC ¶ 28, Fischer Decl. Ex. 1, at 12, during which they might close their accounts and transfer their assets if they so chose, rather than becoming bound by the new terms. While expressing no view on the matter, we note that unilateral changes to banking agreements—pursuant to which a bank has custody of the customer's assets—may pose different concerns than do unilateral changes to credit card agreements—which a customer may readily reject simply by ceasing to use or cancelling his or her credit card. The district court therefore may usefully consider in greater depth the applicability of the credit card cases on which it relied in part in its initial decision. *See, e.g., Follman v. World Fin. Network Nat'l Bank*, 721 F. Supp. 2d 158 (E.D.N.Y. 2010); *Stone v. Golden Wexler & Sarnese, P.C.*, 341 F. Supp. 2d 189 (E.D.N.Y. 2004); *Badie v. Bank of Am.*, 79 Cal. Rptr. 2d. 273 (Ct. App. 1998).

7

For the foregoing reasons, the judgment of the district court is **VACATED** and the case **REMANDED** to the district court for further proceedings consistent with this Order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court